Filed 1/12/24  Sunset Group Realty v. A. Rideau & Associates CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SUNSET GROUP REALTY, INC. et al., | B327620 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCV28976) |
| v. | |
| A. RIDEAU & ASSOCIATES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Law Office of Michael D. Kolodzi and Michael D. Kolodzi for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, and Joseph C. Campo for Defendant and Respondent.

———————————

# INTRODUCTION

Sunset Group Realty, Inc. (SGR) and Edward Sergio Romero (Romero) appeal from the trial court's dismissal with prejudice of their complaint against A. Rideau & Associates, Inc. dba Assistance Insurance Agency (AIA).  Romero, a licensed real estate broker, and SGR, his real estate brokerage company, sued AIA alleging causes of action for fraud and breach of fiduciary duty based on wrongful conduct by one of AIA's insurance agents relating to the procurement of a fidelity bond for SGR.  SGR and Romero filed their complaint after the California Department of Real Estate (the Department) concluded its investigation finding the policy AIA procured had insufficient coverage.  The complaint alleged the lack of a sufficient fidelity bond had devastating financial consequences for SGR and Romero.  The trial court sustained a demurrer to the complaint and dismissed without leave to amend because the complaint was barred by the three-year statute of limitations applicable to claims sounding in fraud.  We affirm because the facts SGR and Romero alleged demonstrate they were on inquiry notice of the allegedly fraudulent conduct before the Department concluded its investigation.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

A.    *AIA Procures an Insurance Policy for SGR*

SGR is a real estate brokerage firm owned by Romero, a licensed real estate broker.  At its height, SGR employed 30 agents under Romero's broker license.

To comply with "guidelines and recommendations" from the Department, SGR maintained workers' compensation coverage for its agents and carried "a fidelity bond, in the event an employee commits a dishonest act, such as theft or forgery— occurrences that are not normally covered by general liability insurance."[2]

Romero became acquainted with Andre Jules Olivier, a licensed insurance agent and vice-president of AIA, because their children attended the same school.[3]  Olivier offered to procure SGR's insurance policies, including workers' compensation coverage and the fidelity bond.  In September 2016, Romero and

---

[1]    The facts are taken from the complaint, which we assume are true for purposes of our review.  (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

[2]    "Fidelity bonds . . . are two-party contracts between an insurer and an employer that protect against employee dishonesty.  It is generally recognized that fidelity bonds resemble traditional contracts of insurance."  (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 46 [a "fidelity bond 'is essentially one of indemnity for the personal loss to the employer'"].)

[3]    SGR and Romero also sued Olivier, but the record is unclear whether he was served with the complaint.  In any event, Olivier is not a party to this appeal.

3

Olivier discussed SGR's insurance coverage. Olivier tried to persuade Romero that SGR did not need workers' compensation insurance because its agents were independent contractors. Romero "knew this statement" was "false" because the California Association of Realtors requires real estate brokers to have such insurance for their agents. He directed Olivier to the appropriate website, told him to forget about workers' compensation coverage (as SGR would stay with its current insurer), but Romero asked Olivier to procure a fidelity bond.

In October 2016, Olivier delivered to SGR a business liability and property insurance policy. Olivier explained to Romero what the policy covered, and stated the policy was "in fact, a fidelity bond plus added coverage." Romero trusted Olivier and accepted the policy, as he had with his prior insurance agent. The complaint alleges Olivier "did not procure a fidelity bond for SGR, but instead secured only a general liability insurance policy."

B.  *SGR and Romero Suffer an Employee Theft in 2017 Insufficiently Covered By the Policy Olivier Procured*

In "July 2017," an SGR escrow agent stole approximately $7,000 from SGR's broker trust account. This was the first time SGR or Romero had experienced such a theft. Romero contacted Olivier, who explained to Romero that SGR was fully covered under the policy he procured, with $25,000 coverage for employee theft. Olivier directed Romero to someone else in AIA to handle the claim.

Romero alleges the policy Olivier procured only covered $5,000 for employee dishonesty, and that as a result, SGR's trust account was short on funds to cover upcoming escrow closings.

4

Romero was thus compelled to deposit his own personal funds into SGR's trust account to cover the closings and avoid damage to real estate clients. As a result of this forced commingling, Romero self-reported to the Department and the Legal Hotline for Realtors because he believed it was the right thing to do.

Based on these facts, "in 2018" the Department audited SGR. Romero had Olivier speak to the Department's auditor at SGR's offices. Olivier represented to the auditor the policy he procured was a proper fidelity bond. The auditor stated she would send the disputed policy to the Department for its review.

On July 18, 2019, the Department concluded its findings and filed a report against Romero and SGR, including the infraction of commingling. "As expected, the [Department] determined SGR did not have the proper insurance coverage to cover the July 2017 employee theft, in contravention of Olivier's representations and/or assurances. [¶] The [Department] commingling infraction thereafter appeared on Romero's public real estate broker license, which is essentially a death sentence for any licensee." (Italics and capitalization omitted.)

For the next 16 months, from July 18, 2019 to November 2020, "Romero appealed and provided evidence to the DRE that having the wrong insurance was never Romero/SGR's intent; and, but for the actions of Olivier, Romero/SGR would have had the proper insurance coverage to cover the employee theft." (Italics and capitalization omitted.) During this time, SGR lost five or six agents, and Romero was unable to sell SGR due to the infraction. In November 2020, the Department granted his appeal and removed the commingling infraction from his public license. Romero paid approximately $10,000 in audit and legal fees.

5

SGR and Romero filed their complaint on September 6, 2022 alleging causes of action for fraud and breach of fiduciary duty against AIA and Olivier.  Romero alleged that as a result of Olivier's actions, SGR lost substantial business revenue, and Romero—who had a "spotless and impeccable DRE record"—incurred mental suffering, insult, humiliation, and embarrassment.  SGR and Romero sought $1 million in damages.

C.  *The Trial Court Dismissed the Complaint Against AIA Without Leave to Amend Because It Was Barred By the Statute of Limitations*

AIA filed a demurrer, arguing the causes of action for fraud and breach of fiduciary duty were each barred by the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d).  AIA argued the statute of limitations accrued in July 2017, when Romero learned the policy Olivier procured was inadequate.  SGR and Romero argued the complaint was timely because the limitations period accrued in July 2019 when the Department determined SGR did not have the proper insurance coverage to cover the July 2017 employee theft.  The trial court ruled that a three-year statute of limitations period applied, sustained AIA's demurrer without leave to amend, and dismissed the complaint against AIA.[4]

---

[4]    The court's minute order states the demurrer is "sustained without leave to amend," but the signed order of dismissal entered the same day suggests AIA is dismissed "without prejudice." (Capitalization omitted.)  The parties do not contend the signed order of dismissal meant SGR and Romero were free to amend the complaint, and all parties deemed AIA's dismissal to be without leave to amend.

6

SGR and Romero timely appealed.

**DISCUSSION**

A.      *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; *Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1174.)

"'The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*), quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "'If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . . The plaintiff has the burden of proving that an amendment would cure the defect.'" (*Modisette v. Apple Inc.* (2018)

7

30 Cal.App.5th 136, 155 (*Modisette*); see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

Our review is de novo. (See *McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415; accord, *Zelig, supra,* 27 Cal.4th at p. 1126.)

B.   *The Trial Court Properly Sustained AIA's Demurrer Because the Statute of Limitations Barred the Fraud and Breach of Fiduciary Duty Causes of Action*
  1.   *The Applicable Statute of Limitations Is Three Years, Subject To the Delayed Discovery Rule*

AIA contends, SGR and Romero do not dispute, and we agree the applicable statute of limitations governing the fraud and breach of fiduciary duty claims in the complaint is three years.[5]  (See Code Civ. Proc., § 338, subd. (d) [claims sounding in "fraud or mistake" subject to three-year statute of limitations]; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 (*Miller*).)

Code of Civil Procedure section 338, subdivision (d), further provides that "[t]he cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Under this "'delayed discovery rule' . . . the accrual date of a cause of action is delayed until the plaintiff is aware of his or her injury and its cause.  The plaintiff is charged with this awareness as of the date he or she suspects or should suspect that the injury was caused by

---

[5]   The breach of fiduciary duty cause of action is based on the same factual allegations as the fraud cause of action, and further alleges that "a cause of action for breach of fiduciary duty can be based on fraud."

someone's wrongful act.  The period of limitations, therefore, will begin to run when the plaintiff has a 'suspicion of wrongdoing'; in other words, when he or she has notice of information of circumstances to put a reasonable person on inquiry." (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35 (*Brandon G.*), citing *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109-1111.) If plaintiffs "became aware of facts which would make a reasonably prudent person suspicious," they have "a duty to investigate further," and are "charged with knowledge of matters which would have been revealed by such an investigation." (*Miller*, *supra*, 33 Cal.3d at p. 875.)

      2.    *The Complaint Was Filed After the Statute of Limitations Had Expired and Is Not Made Timely By the Delayed Discovery Rule*

Whether SGR and Romero's complaint is barred by the statute of limitations depends on when the fraud and breach of fiduciary duty causes of action accrued.  The trial court's minute order did not explain its reasoning, but in essence accepted AIA's argument the September 2022 complaint was untimely because it was filed more than three years after July 2017, when SGR and Romero learned the insurance policy Olivier procured was insufficient to cover the employee theft.  We agree we must examine if the delayed discovery rule saves the complaint; otherwise, the complaint is time barred because it should have been filed within three years of July 2017, which is when the complaint alleges that SGR and Romero were injured as a result

9

of AIA's alleged fraud.  (See Code Civ. Proc., § 338, subd. (d); *Miller*, *supra*, 33 Cal.3d at p. 875.)[6]

As noted above, even under the delayed discovery rule the statute of limitations "begin[s] to run when the plaintiff has a 'suspicion of wrongdoing'; in other words, when he or she has notice of information of circumstances to put a reasonable person on inquiry." (*Brandon G.*, *supra*, 111 Cal.App.4th at p. 35.)  SGR and Romero argue that under the delayed discovery rule the three-year limitations period "began to accrue on July 18, 2019— the date the DRE officially determined that SGR did not have the proper insurance coverage . . . which settled the key dispute between SGR/Romero and Olivier, and thus proved Olivier's wrongful actions in the procurement of a proper fidelity bond." (Capitalization and underlining omitted.)  SGR and Romero further contend that until the Department's final decision, Olivier "swore that the fidelity bond he had procured for SGR was appropriate.  Thus, Romero had no way of resolving the dispute" until the Department issued its ruling because that was when "Romero learned, as a fact, that SGR did not have the proper coverage." (Capitalization and underlining omitted.)

Reading the factual allegations in the complaint liberally (as we must) and even with the benefit of the delayed discovery rule, we are unpersuaded.  It is undisputed that SGR and Romero knew in July 2017 that the policy AIA procured did not fully

---

[6]     SGR and Romero do not argue the statute of limitations was equitably tolled during the Department's investigation.  (See *Saint Francis Memorial Hospital v. State Department of Public Health* (2020) 9 Cal.5th 710, 724 [outlining elements for equitable tolling while plaintiff pursues administrative remedy].)

cover the loss from the employee theft as promised by Olivier, and that Romero was forced to commingle almost $2,000 of his own assets with SGR as a result. "[A] cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads . . . that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 803.) The complaint falls short of what is necessary to invoke the delayed discovery rule because SGR and Romero did not need the Department's investigation to be completed before they became aware of their injury and that it was caused by AIA's conduct.

Indeed, the complaint alleges that when the Department concluded its investigation, it merely confirmed what SGR and Romero already knew: "As expected, the DRE determined SGR did not have the proper insurance coverage." And even accepting as true the allegations that Olivier maintained the policy was "appropriate" while the Department investigation was pending, it is undisputed that SGR and Romero knew that since July 2017 the policy AIA procured did not provide full coverage for the employee theft loss. The gravamen of the complaint is not that the particular label attached to the policy AIA procured itself caused SGR and Romero injury (that is, whether it was a fidelity bond or not), but rather that SGR and Romero were injured by the policy's insufficient coverage, which was contrary to Olivier's representations. More fundamentally, the complaint does not allege facts, nor do SGR and Romero explain, why the Department needed to conclude its investigation before they were on notice of AIA's fraudulent conduct. Once SGR and Romero

11

knew that the policy AIA procured would not fully indemnify them for the employee theft, they were on inquiry notice to investigate further rather than await the results of the investigation by the Department.[7]

SGR and Romero's primary argument on appeal is that it was "improper" for the trial court to sustain the demurrer because the complaint "on its face, asserted July 18, 2019, to be the accrual date." But on demurrer the trial court was not bound by legal conclusions contained in the complaint. (See *City of Dinuba v. County of Tulare*, *supra*, 41 Cal.4th at p. 865 [on demurrer we "do not assume the truth of contentions, deductions or conclusions of law"]; accord, *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300-301.)

SGR and Romero argue for the first time on reply that "the proper accrual date and/or application of the delayed discovery rule is a question of fact" incapable of resolution on demurrer due to the parties' "differences in opinion" regarding the accrual date. The contention is forfeited because it was not raised in the opening brief. (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982 ["'An appellant . . . forfeits an issue by failing to raise it

_____

[7] Indeed, other allegations in the complaint suggest SGR and Romero should have been on notice that representations from AIA or Olivier warranted further evaluation. For example, the complaint alleges that in September 2016 Olivier tried to persuade Romero he had no need for workers' compensation coverage because his real estate agents were "'independent contractors,'" but Romero "knew this statement to be false" because he was required by the California Association of Realtors to have such coverage for his agents.

in his or her opening brief"], quoting *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.)  But even considering the argument on its merits, the accrual date is based not on "differences of opinion" but rather on the allegations in the complaint.  And the complaint demonstrates SGR and Romero knew or should have known they were injured by AIA's conduct in July 2017 when the policy AIA procured would not cover in full the loss from the employee theft.[8]

C.     *The Trial Court Did Not Abuse Its Discretion by Denying Leave To Amend.*

Before the trial court, SGR and Romero asked for leave to amend, a request they do not renew on appeal.  The trial court did not err by denying leave to amend because SGR and Romero did not explain what additional facts they could allege that would make timely their untimely complaint.  (See *Modisette*, *supra*, 30 Cal.App.5th at p. 155 ["'The plaintiff has the burden of proving that an amendment would cure the defect.'"]; accord, *Schifando*, *supra*, 31 Cal.4th at p. 1081.)

---

[8]     We need not reach SGR and Romero's argument the complaint is timely when considering the tolling provided by Judicial Council Emergency Rule No. 9.  Even assuming the emergency rule applied and tolled the limitations period between April 6 and October 1, 2020, the complaint would still be untimely by over a year because it was filed in September 2022.

13

## DISPOSITION

The order of dismissal is affirmed.  AIA is entitled to its costs on appeal.


                                        MARTINEZ, J.

We concur:



        FEUER, Acting P. J.



        EVENSON, J.*

---

\*        Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14